## PEOPLE v HAYWARD

Docket No. 62077. Submitted April 5, 1983, at Grand Rapids.—Decided July 7, 1983.

Gaylen Hayward was convicted of second-degree criminal sexual conduct following a jury trial in Barry Circuit Court, Richard Robinson, J. The nine-year-old victim testified at the preliminary examination. Subsequent to the preliminary examination but prior to trial, the victim indicated an inability to remember the events of the evening of the crime. The prosecution moved to have the victim declared unavailable as a witness so that her preliminary examination testimony could be used at trial. Following two hearings at which the victim was extensively examined, the trial court granted the prosecution's motion and, thereafter, the preliminary examination testimony was admitted at trial. Prior to trial defendant moved to suppress the admission of the testimony of a police detective concerning certain statements made by defendant to the detective, including the statement that he "preferred younger women or young girls who were inexperienced so he could teach them". The basis for the motion was that the statements were not freely and voluntarily made. Following a hearing, the trial judge suppressed as irrelevant testimony concerning all of defendant's statements except the statement concerning his preference for young girls. At trial, over a defense objection, the prosecution was permitted to impeach defendant with evidence of a prior conviction for attempted unlawful use of a motor vehicle, a misdemeanor which carries a maximum sentence of one year. Defendant appeals. *Held:*

1. A person is unavailable as a witness where that person has a lack of memory of the subject matter of a prior statement.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 29 Am Jur 2d, Evidence §§ 738, 743, 749, 753.

[1, 3, 4] 81 Am Jur 2d, Witnesses § 457.

[2] 29 Am Jur 2d, Evidence §§ 738, 743, 749.

[5] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

[6, 9] 29 Am Jur 2d, Evidence § 327.

[7, 8] 7A Am Jur 2d, Automobiles and Highway Traffic § 349.

The former testimony of such an unavailable witness may be used if the testimony was given in a prior proceeding in which the party against whom the testimony is being offered had the opportunity to examine the witness and a motive to do so. Since it was determined that the victim could not remember the events of the evening of the crime, the trial judge properly permitted the use at trial of her preliminary examination testimony.

2. The question of whether the statement concerning defendant's sexual preference was relevant or whether it was prejudicial to defendant's case is not properly before the Court of Appeals. The only objection to that testimony made below was on the ground that the statement was not freely and voluntarily made. Absent a showing of manifest injustice, objections to admission of evidence cannot be raised for the first time on appeal. Manifest injustice has not been shown.

3. A witness may be impeached by evidence of a prior conviction for a misdemeanor punishable by a maximum sentence of one year if the crime involves theft, dishonesty, or false statements. Attempted unlawful use of a motor vehicle is a crime involving dishonesty. The trial judge properly permitted the use of evidence of defendant's prior conviction for attempted unlawful use of a motor vehicle for impeachment purposes.

Affirmed.

1. WITNESSES — UNAVAILABLE WITNESSES — EVIDENCE.

A witness may be considered unavailable because of a lack of memory and his prior testimony may then be admitted into evidence where that testimony was given at a proceeding and the opposing party had the opportunity of cross-examination (MRE 804[a][3], 804[b][1]).

2. WITNESSES — PRIOR RECORDED TESTIMONY.

The prior recorded testimony of a witness is considered trustworthy where the witness testified under oath and the opponent had a fair opportunity and proper motive to examine the witness at the earlier proceeding.

3. WITNESSES — PRIOR RECORDED TESTIMONY — LOSS OF MEMORY.

The crucial factor in determining whether prior recorded testimony is admissible under the Rules of Evidence is not the unavailability of the witness but rather the ability of the witness to recollect the prior recorded statements (MRE 804[a][3]).

4. Witnesses — Prior Recorded Testimony — Loss of Memory — Criminal Law.

The prior recorded testimony of a nine-year-old child is properly admitted in a criminal trial where that witness was extensively cross-examined at the prior proceeding and thereafter is unable to remember the events in question (MRE 804[a][3]).

5. Appeal — Evidence — Preserving Question.

An objection to the admission of evidence on a basis not raised in the trial court will not be heard for the first time on appeal absent a showing of manifest injustice.

6. Evidence — Impeachment — Prior Convictions — Misdemeanors.

Evidence of a prior misdemeanor conviction involving theft, dishonesty, or false statement is admissible for impeachment if the trial court determines that the conviction is more probative on the issue of credibility than unfairly prejudicial to the witness (MRE 609).

7. Criminal Law — Automobiles — Unlawful Use of a Motor Vehicle.

The elements of the misdemeanor offense of unlawful use of a motor vehicle are: (1) the motor vehicle did not belong to the defendant, (2) having obtained lawful possession of the vehicle from the owner, the defendant used it beyond the authority which was given to him, and (3) the defendant must have intended to use the vehicle beyond the authority granted to him, knowing that he did not have the authority to do so; unlawful use of a motor vehicle is a lesser included offense of the felony of unlawfully driving away a motor vehicle (MCL 750.413, 750.414; MSA 28.645, 28.646).

8. Criminal Law — Automobiles — Unlawful Use of a Motor Vehicle — Unlawfully Driving Away a Motor Vehicle.

The felony of unlawfully driving away a motor vehicle is distinguished from the misdemeanor of unlawful use of a motor vehicle in that unlawfully driving away a motor vehicle requires proof that the defendant took possession of the vehicle without the owner's permission, while unlawful use of a motor vehicle is committed when the defendant has been given lawful possession of the motor vehicle but uses the vehicle beyond the authority granted to him by the owner (MCL 750.413, 750.414; MSA 28.645, 28.646).

9. EVIDENCE — IMPEACHMENT — MISDEMEANORS — UNLAWFUL USE OF
   A MOTOR VEHICLE.

The misdemeanor of unlawful use of a motor vehicle is an offense
involving a breach of trust, misrepresentation, or an inclination
to deceive and is thus a misdemeanor involving dishonesty or
false statement within the meaning of the rules of evidence
relative to the use of evidence of prior convictions for impeach-
ment purposes; accordingly, evidence of a prior conviction for
attempted unlawful use of a motor vehicle, a misdemeanor
punishable by imprisonment for one year, may be admitted for
impeachment purposes (MCL 750.414; MSA 28.646; MRE
609[a]).

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Judy A. Hughes,* Prose-
cuting Attorney, and *Leonard J. Malinowski,* As-
sistant Attorney General, Prosecuting Attorneys
Appellate Service, for the people.

*David H. Tripp,* for defendant on appeal.

Before: BEASLEY, P.J., and R. B. BURNS and T. C.
MEGARGLE,* JJ.

PER CURIAM. On September 1, 1981, defendant,
Gaylen Hayward, was convicted by a jury of sec-
ond-degree criminal sexual conduct as charged, in
violation of MCL 750.520c(1)(a); MSA
28.788(3)(1)(a). After being sentenced to serve not
less than 3-1/2 years nor more than 15 years in
prison, defendant appeals as of right.

Defendant was charged with engaging in sexual
contact with a nine-year-old female. At the prelim-
inary examination, the complainant testified that
on the evening of December 12, 1980, defendant,
on more than one occasion, rubbed her genital
area with his hands. The complainant's testimony

---

* Circuit judge, sitting on the Court of Appeals by assignment.

was corroborated by the testimony of a 13-year-old male who was present at the time of the event.

Prior to trial, the prosecutor filed a motion in which she sought, under MRE 804(a)(3), to have the complainant declared unavailable as a witness and to use the complainant's preliminary examination testimony at trial as substantive evidence. After a hearing held on July 8, 1981, the trial court granted the prosecutor's motion, finding that the complainant was unable to recollect the events of December 12, 1980:

"I don't know why this child can't remember. I don't think that's important. Certainly psychiatric examination might shed some light on this why she doesn't remember, but I don't think that is critical to my decision.

"The central fact as it appears to me—appeared to me, she did not remember the important facts of these incidents. This child is young enough. I find it difficult to believe that she's trying to mislead this court. As far as her memory is concerned, I think that she does not remember. I think that's not surprising, since this thing she relates in her preliminary examination indicates she's suffered a traumatic experience, and for that reason alone she's blocking it out.

"I'm satisfied that she's not misleading the court on her lack of memory, and you may have an order, Mrs. Hughes, indicating that the witness is not available, and so you may use her—testimony in the preliminary examination.—However, I'll let you use that portion of the testimony today—for the impeachment—impeaching her testimony. I won't let you use her whole testimony today. That part going to her—the issue of her lack of memory, I think that that is a question for me to decide, not the jury. For that reason, also, I'll not let the child be called at trial to question her concerning her lack of memory. I don't think that's a jury question."

On defendant's motion for a rehearing, a second hearing was held a month thereafter on the issue of the complainant's inability to remember the events to which she testified at the preliminary examination. While reaffirming his ruling that the preliminary examination transcript of the testimony could be used at trial, the trial court ruled that the complainant's testimony at the two hearings subsequent to the examination could be used to impeach the complainant.

On appeal, defendant raises several issues. First, he maintains that the trial court erred in allowing the prosecutor, over objection, to place the preliminary examination testimony of the complainant in evidence at trial.

The applicable evidentiary rules, MRE 804(a)(3) and MRE 804(b)(1), provide:

"(a) *Definition of unavailability.* 'Unavailability as a witness' includes situations in which the declarant—

\* \* \*

"(3) has a lack of memory of the subject matter of his statement;

\* \* \*

"(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

Prior to the adoption of the Michigan Rules of

Evidence by the Supreme Court,[1] we held, in *People v Thomas,*[2] that it is appropriate for a trial court to admit the prior recorded testimony of a witness who was unable to remember the events to which he testified at an earlier hearing. The *Thomas* Court relied upon *People v Pickett,*[3] where the Supreme Court upheld the admissibility of the preliminary examination testimony of a prosecution witness who refused to testify at trial on grounds that he would incriminate himself. In a case decided subsequent to the adoption of MRE 804, we held that the prior recorded testimony of a witness who is declared to be unavailable as a witness because of lack of memory is admissible into evidence at trial.[4]

Our review of the record reveals that defendant vigorously and effectively cross-examined complainant at the preliminary examination. Prior recorded testimony of a witness is considered trustworthy because the witness testified under oath and the opponent had a fair opportunity and proper motive to examine the witness at the earlier proceeding.[5] "Unavailability of a witness based on a failure of memory" is described by Professor McCormick in the following passage:

> "If the witness has lost his memory of the relevant matters, because of the failure of his faculties due to disease or senility, this is a good ground of unavailability. If the gap in the recollection or fading of memory is due merely to the lapse of time, the effect is the same, namely the inability of the witness to give to the court

---

[1] The Michigan Rules of Evidence were adopted on January 5, 1978, to be effective on March 1, 1978.

[2] 61 Mich App 717, 719; 233 NW2d 158 (1975).

[3] 339 Mich 294; 63 NW2d 681 (1954).

[4] *People v J D Williams,* 117 Mich App 505, 509-510; 324 NW2d 70 (1982).

[5] Lilly, Evidence, § 74, pp 251-254.

his former firsthand knowledge of the facts. In common sense it seems that the legal consequence, that is, the use of the former testimony, should likewise be the same. Some courts, however, have jibbed at this point, on the ground that this would open the door to a perjured claim of forgetfulness by a witness who learns that the adversary has discovered facts which give a new handle for cross-examination. The danger of the success of such an attempt, which would expose the witness to cross-examination on his motives and his memory, seems greatly outweighed by the need for the use of the former testimony when the assertion of forgetfulness is true. Forgetfulness by a disinterested witness of facts of no personal moment to him, in the course of a delayed lawsuit, is frequent and familiar enough. The inconvenience of this narrow view, that forgetfulness is not a ground of unavailability, it seems, should be avoided by treating lapse of memory if complete as a ground of unavailability, or if partial as a ground for admitting both the former, and the present testimony of the witness." (Footnotes omitted.)[6]

In *United States v Amaya,*[7] the Fifth Circuit Court of Appeals held that the trial judge did not abuse his discretion in deciding that a witness who testified at a prior trial was unavailable to testify at a subsequent trial where, prior to the commencement of the second trial, the witness was involved in an automobile accident and sustained a loss of memory regarding his prior testimony.

Similarly, in *United States v Davis,*[8] the court held that former testimony of a witness was admissible where the witness testified at trial as to his inability to remember his prior testimony. The crucial factor in determining whether prior re-

---

[6] McCormick, Evidence (2d ed), § 253(5), pp 611-612.

[7] 533 F2d 188 (CA 5, 1976), *reh den* 540 F2d 1086 (1976).

[8] 551 F2d 233 (CA 8, 1977), *cert den* 431 US 923; 97 S Ct 2197; 53 L Ed 2d 237 (1977). See, also, *United States v Pfingst,* 477 F2d 177 (CA 2, 1973), *cert den* 412 US 941; 93 S Ct 2779; 37 L Ed 2d 400 (1973).

corded testimony is admissible under MRE 804(a)(3) and FRE 804(a)(3) is not the unavailability of the witness; rather it is the ability of the witness to recollect the prior recorded statements.[9]

In the within matter, we conclude that the trial court did not abuse its discretion in applying the "unavailability of a witness hearsay exception" with respect to complainant's prior recorded testimony. At two hearings held subsequent to the preliminary examination and at trial, defendant cross-examined the complainant regarding her claim that she was unable to remember the events of December 12, 1980. We find that the former testimony was sufficiently trustworthy to be admitted as an exception to the hearsay rule.

Defendant also assigns as error the trial court's admission of testimony concerning a statement made by defendant to the investigating officer, Dana Steidler, that he "preferred younger women or young girls that were inexperienced so he could teach them". Defendant asserts that his sexual preferences were not relevant to the prosecution and, in fact, were highly prejudicial to his defense.

As part of his investigation of the case, Steidler, a City of Hastings police detective, interviewed defendant. While not admitting that he engaged in sexual contact with complainant, defendant, after being advised of his Miranda[10] rights, informed Steidler that he (1) possessed a collection of pornographic books, (2) considered most women to be whores, and (3) preferred young and inexperienced women.

Prior to trial, defendant filed a motion to suppress testimony concerning the foregoing state-

[9] See Walden v Sears, Roebuck & Co, 654 F2d 443 (CA 5, 1981).

[10] Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

ments, alleging that they were not freely and voluntarily made. Thereupon, a *Walker*[11] hearing was conducted, after which the trial court suppressed, as irrelevant, all of defendant's statements other than his stated preference for young and inexperienced women.

It is noteworthy that defendant neither objected to nor requested a cautionary instruction concerning Steidler's testimony in regard to defendant's sexual preferences.[12] Absent a showing of manifest injustice, specific objections to the admission of evidence cannot be raised for the first time on appeal.[13] Although we are inclined to agree with defendant that his sexual preferences were not relevant to the charged offense, we do not find that manifest injustice was occasioned by admission of the evidence.

Thirdly, defendant maintains that the trial court erred in permitting the prosecutor to impeach him with evidence of a prior conviction of attempted unlawful use of an automobile, an offense which carries a maximum one-year sentence. Essentially, defendant argues that it was improper to allow the prosecutor to impeach him with evidence of a misdemeanor offense that did not involve theft, dishonesty, or false statement.

The trial court permitted impeachment of defendant with evidence of four prior convictions: two larceny in a building convictions, one larceny under $100 conviction, and one attempted unlawful use of an automobile conviction. On appeal, defendant does not dispute the propriety of the use of

---

[11] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[12] Defendant's objection to the testimony was not based on relevancy grounds; rather, he asserted that his statement to the investigating officer was involuntary.

[13] *People v Peery,* 119 Mich App 207, 211; 326 NW2d 451 (1982).

evidence of the three larceny convictions for impeachment pruposes.

MRE 609(a) provides:

"(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if

"(1) the crime was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or the crime involved theft, dishonesty or false statement, regardless of the punishment, and

"(2) the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect and articulates on the record the factors considered in making the determination."

The foregoing evidentiary rule is sometimes held to have modified prior Michigan law which prohibited the use of evidence of prior misdemeanor convictions to impeach a defendant in a criminal case.[14] Under MRE 609(a), evidence of a prior misdemeanor conviction involving theft, dishonesty, or false statement is admissible for impeachment if the trial court determines that the conviction is more probative on the issue of credibility than unfairly prejudicial to the witness.

The elements of the specific intent offense of unlawful use of a motor vehicle[15] are (1) the motor vehicle did not belong to the defendant, (2) having obtained lawful possession of the vehicle from the owner, the defendant used it beyond the authority

---

[14] See *People v Renno,* 392 Mich 45, 56; 219 NW2d 422 (1974).

[15] The statute prohibiting the taking or using of a motor vehicle without authority has been interpreted to cover a bailment or a rental agreement. *People v Smith,* 213 Mich 351; 182 NW 64 (1921); OAG, 1914, p 690 (April 27, 1914).

which was given to him, and (3) the defendant must have intended to use the vehicle beyond the authority granted to him, knowing that he did not have the authority to do so.[16] Unlawful use of a motor vehicle is a lesser included offense of unlawfully driving away a motor vehicle (UDAA), a felony commonly known as "joyriding".[17]

The distinction between the two offenses is that UDAA (joyriding) requires the defendant to take possession of the motor vehicle without the owner's permission, while the misdemeanor offense of unlawful use of a motor vehicle is committed when an individual, who has been given lawful possession of a motor vehicle, uses it beyond the authority which has been granted to him by the owner.[18]

A description of the felony offense of UDAA (joyriding) is embraced in the following passage:

"The taking, using, or operating of a motor vehicle without the consent of the owner is made a criminal offense by specific statute in many jurisdictions. Although such a statutory offense may be designated larceny, the common-law definition of larceny is changed by eliminating the requirement of intent permanently to deprive the owner of his property. Such statutes have been enacted in order to cover, not a 'larcenous' taking, but a 'wrongful' taking without the consent of the owner. Such offense is separate and distinct from the offense of larceny, and does not supersede it. But it has been held to be a lesser included offense of larceny.

[16] *People v Crosby,* 82 Mich App 1, 3; 266 NW2d 465 (1978), *lv den* 406 Mich 971 (1979); CJI 24:2:01.

[17] MCL 750.414; MSA 28.646; MCL 750.413; MSA 28.645. UDAA was referred to as "joyriding" in *People v Stanley,* 349 Mich 362, 364; 84 NW2d 787 (1957), *People v Helcher,* 14 Mich App 386, 387; 165 NW2d 669 (1968), and *People v Lerma,* 66 Mich App 566, 567; 239 NW2d 424 (1976), *lv den* 396 Mich 848 (1976).

[18] See 9 ALR3d 633, 645; CJI 24:2:04; *People v Blocker,* 45 Mich App 138, 142; 206 NW2d 229 (1973), *aff'd* 393 Mich 501; 227 NW2d 767 (1975).

"While the elements of the offense depend upon the wording of the statute, they usually consist of taking possession of a vehicle, driving or taking it away, willfulness, and lack of authority; proof of intent to permanently deprive the owner of the property is not required." (Footnotes omitted.)[19]

As illustrated in Perkins, Criminal Law (2d ed), pp 272-273, joyriding statutes were enacted by various states in order to provide a criminal penalty for the unlawfully taking away, without intent to steal, of a motor vehicle:

"The social problem back of this legislation is well known. When the automobile began to appear and was limited to the possession of a few of the more fortunate members of the community, many persons who ordinarily respected the property rights of others, yielded to the temptation to drive one of these new contrivances without the consent of the owner. This became so common that the term 'joyrider' was coined to refer to the person who indulged in such unpermitted use of another's car. For the most part it was a relatively harmless type of trespass, although it was quite annoying if the 'joyrider' had not returned when the owner came back for his automobile. The chief harm was due to the fact that the 'joyrider' was frequently not a skillful driver, and sometimes unintentionally damaged the car while using it.

"It was when 'joy-riding' was at its height that most of the legislative enactments providing a penalty therefor were passed and the mere prevalence of this type of wilful trespass is sufficient to explain the creation of this statutory crime. The severity of the punishment attached (the crime being a felony in many jurisdictions) is attributable to two factors: First, the trespass occasionally resulted in great damage to the car, as previously mentioned; second, the prevalence of this kind of trespass made it very difficult to secure convictions in cases of outright larceny of motor vehicles,

[19] 7A Am Jur 2d, Automobiles and Highway Traffic, § 349, pp 534-535.

because the claim of an intent to return usually seemed plausible."[20]

From the foregoing discussion, it is apparent that the UDAA (joyriding) statute does not apply to one who takes an automobile with the owner's consent but uses it in excess of the permission granted to him. This concept was articulated in *State v Boggs,*[21] where the Iowa Supreme Court held that if the owner consents to allow another to operate his automobile, the person given lawful permission cannot be convicted of operating an automobile without the consent of the owner, notwithstanding that the use thereof clearly transcended the permission granted by the owner.

Under MRE 609(a), the crime of unlawful use of a motor vehicle, a misdemeanor punishable by imprisonment for not more than two years, may be used to impeach a defendant in a criminal case, since the crime is punishable by "imprisonment in excess of one year". However, since defendant herein previously had been convicted of attempted unlawful use of a motor vehicle, which carries a one-year maximum sentence, the offense could not be used for impeachment purposes unless it involved theft, dishonesty, or false statement.

In our view, the act of using a motor vehicle without authority is a crime involving dishonesty. In Black's Law Dictionary (4th ed), p 554, dishonesty is defined as "disposition to lie, cheat, or defraud; untrustworthiness; lack of integrity". Dishonesty has also been defined as "a disposition to deceive",[22] and "a lack of honesty, probity, or integrity in principle".[23]

---

[20] In Michigan, the first joyriding statute was enacted in 1907, 1907 PA 44, § 1.

[21] 181 Iowa 358; 164 NW 759 (1917).

[22] *Gee v California State Personnel Board,* 5 Cal App 3d 713, 719; 85 Cal Rptr 762 (1970).

[23] *Tucker v Lower,* 200 Kan 1; 434 P2d 320 (1967).

The Ninth Circuit Court of Appeals held that, within the evidentiary rule permitting impeachment by proof of commission of a misdemeanor involving dishonesty or false statement, evidence of an offense which entails an element of misrepresentation or falsification could be used for impeachment.[24] We hold that unlawful use of a motor vehicle is an offense involving a breach of trust, misrepresentation, or an inclination to deceive, because the actor, who had lawful possession of another person's motor vehicle, breached the trust reposed in him by using the vehicle in excess of the stated authority.

Consequently, the trial judge properly permitted the prosecutor to impeach defendant with evidence of the prior conviction of attempted unlawful use of a motor vehicle. We note also that had we held it improper to allow impeachment by the use of the one-year misdemeanor, the error would have been harmless beyond a reasonable doubt.

Affirmed.

---

[24] *United States v Ortega,* 561 F2d 803, 806 (CA 9, 1977).