# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 9, 2017

Plaintiff-Appellee,

v

No. 332757
Delta Circuit Court
LC No. 15-009165-FC

DAVID WAYNE KING,

Defendant-Appellant.

Before: SAWYER, P.J., and MURRAY and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of two counts each of first and second-degree criminal sexual conduct for the sexual penetration and touching of his granddaughter. Defendant challenges the admission at the current trial of the transcribed testimony of a young woman whom he was previously convicted of sexually assaulting. He also challenges the scoring of an offense variable. We discern no errors and affirm.

## I. BACKGROUND

Defendant's convictions arise from the sexual abuse of his granddaughter over a three-year period beginning when she was 10 years old. Defendant is AK's paternal grandfather. AK often slept at defendant's home while her parents worked. AK testified that on approximately 30 occasions, defendant touched her breasts and penetrated her vagina with half of his finger. He sometimes awakened AK to perpetrate his assaults. The assaults stopped when AK's parents divorced and her mother lost contact with AK's father and grandfather. AK waited until she was 17 years old to report her grandfather's abuse. She testified that she delayed her report out of fear. An expert testified on behalf of the prosecution that this is "a normal response" for a child sexual abuse victim.

Before trial, the prosecutor moved to present evidence that defendant had been convicted of three counts of third-degree CSC in 1995. These convictions arose from defendant's sexual assault of his children's 13-year-old babysitter, FW. When FW indicated that she would not testify, the prosecutor sought to admit a transcript of her testimony from the 1995 trial. The court conducted a hearing and questioned FW. FW was then in her mid-twenties. She stated that she had worked hard to forget the incidents and explained, "I remember his face, stuff like his coffee and cigarette breathe, and just pain. I don't remember the details." The court accepted

FW's account and found her unavailable to testify. The court therefore admitted her 1995 testimony into evidence at defendant's current trial.

The transcript of FW's 1995 testimony was read into the record. FW described that she had often spent the night at the home of defendant and his wife when she babysat late. On one occasion, defendant awoke her by rubbing her legs. Defendant then penetrated FW's vagina with his penis. Thereafter, FW tried to avoid defendant and only babysit when she would deal with his wife. However, FW forgot to call to ensure that defendant's wife was home before travelling to his house one day. Defendant asked FW to watch the children while he went to the store. When defendant returned, he asked FW to retrieve some laundry from the basement because his back hurt. Defendant followed FW to the basement and forcibly penetrated her anus with his penis. Defendant left when one of the children called him. On a third occasion, defendant convinced FW to stay and watch the children after his wife left because he might be called into work. After the children were in bed, defendant followed FW into the bathroom where he again forcibly raped her from behind.

The jury convicted defendant as charged. He now appeals.

## II. PRIOR ACTS EVIDENCE

Defendant contends that evidence of his prior bad acts was unfairly prejudicial and should have been excluded. In the alternative, he contends that the circuit court should have required FW to provide live testimony, rather than allowing the prosecutor to read her testimony from the 1995 trial into the record.

We discern no error in the admission of evidence that defendant had previously sexually assaulted a teenaged girl in this home. We review for an abuse of discretion a trial court's decision to admit other acts evidence. *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009). "A court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*.

In general, evidence of other acts is inadmissible with certain exceptions:

> In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant. [MCL 768.27; see also MRE 404(b).]

However, MCL 768.27a(1) allows the admission of other acts evidence to establish a defendant's propensity to commit sexual acts against a minor: "Notwithstanding [MCL 768.27], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Defendant was charged with

and convicted of "listed offenses" in both the current and 1995 case. See MCL 28.722(j), (w)(*iv*), (w)(*v*).

"[E]vidence admissible pursuant to MCL 768.27a may nonetheless be excluded under MRE 403 if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *People v Watkins*, 491 Mich 450, 481; 818 NW2d 296 (2012), citing MRE 403.

> [W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect. That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference. [*Watkins*, 491 Mich at 487.]

*Watkins* identified several factors that may result in the exclusion of prior act evidence, including

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Id.* at 487-488 (citation omitted).]

Although defendant's acts against his granddaughter were not identical to the offenses committed against FW, they were not so dissimilar as to weigh in favor of exclusion. Defendant's offenses against AK and FW all occurred in his home when the girls were in a vulnerable position and at least somewhat under his control. Both girls testified that defendant forced penetration, although by different mechanisms. See *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016) ("The fact that defendant did not engage in penetration with his nephew, but did with MM, does not make the acts so dissimilar that the probative value of the evidence was outweighed by the danger of unfair prejudice . . . ."). And the girls were approximately the same age at the time.

That defendant assaulted AK more frequently than FW (30 compared to three) also does not render the prior acts irrelevant. Defendant's victims described his modus operandi as taking advantage of opportunities to sexually assault them. Defendant had frequent opportunity to abuse AK as her parents often left AK at the home of her grandparents for childcare. FW, as an occasional babysitter with no relation to defendant's family, was able to avoid defendant more effectively, limiting defendant's chances to catch her alone. However, the acts did occur approximately 13 years apart, a sizeable temporal gap.

Defendant cites his five-year incarceration for assaulting FW as an "intervening act" that weighs against admission of the prior act evidence. Defendant cites no authority for this proposition and provides absolutely no explanation for how his prison term would make the

current accusations less likely. Factor (5) also supports admission. A jury convicted defendant of criminal sexual conduct based on the account of FW. This supports the reliability of the evidence supporting the prior acts. And FW's evidence was necessary to the current case, which was otherwise a credibility contest between witnesses regarding events that occurred more than four years earlier.

Moreover, the court read to the jury CJI2d 20.28a, "the standard instruction on evidence of other acts of child sexual abuse." *Id*. at 490. "[T]his instruction is available to ensure that the jury properly employs [the prior act] evidence." *Id*. Specifically, the instruction provides:

> "(1) The prosecution has introduced evidence of claimed acts of sexual misconduct by the defendant with [a minor / minors] for which [he / she] is not on trial.
>
> (2) Before you may consider such alleged acts as evidence against the defendant, you must first find that the defendant actually committed those acts.
>
> (3) If you find that the defendant did commit those acts, you may consider them in deciding if the defendant committed the [offense / offenses] for which [he / she] is now on trial.
>
> (4) You must not convict the defendant here solely because you think [he / she] is guilty of other bad conduct. The evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find [him / her] not guilty." [*Id*., quoting CJI2d 20.28a.]

Under these circumstances, we cannot conclude that the trial court abused its discretion in admitting the prior acts evidence.

Defendant raises two additional challenges to the introduction of the prior acts evidence: that the trial court incorrectly concluded that FW was unavailable to testify, and that the introduction of her prior testimony violated defendant's Sixth Amendment right to confront the witnesses against him.

We also discern no error in the trial court's determination that FW was unavailable to testify. We review for clear error a trial court's factual determination that a witness is unavailable. *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993).

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010); MRE 802. MRE 804(b) removes certain statements from the hearsay rule if the declarant is deemed "unavailable as a witness." MRE 804(a)(3) defines "unavailability" to include a declarant who "has a lack of memory of the subject matter of the declarant's statement." MRE 804(b)(1) permits the admission of "[t]estimony given as a witness at another hearing of the same or a

different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

"The crucial factor in determining whether prior recorded testimony is admissible under MRE 804(a)(3) . . . is the ability of the witness to recollect the prior recorded statements." *People v Hayward*, 127 Mich App 50, 57-58; 338 NW2d 549 (1983). FW explained at a pretrial hearing that she remembered little of the events in question: "I remember his face, stuff like his coffee and cigarette breath, and just pain. I don't remember the details." FW added, "I tried forgetting everything." FW denied that she remembered the house in which the events occurred, which rooms, or anything specific about the acts. The trial court concluded "that [FW] testified very sincerely and honestly and that she has no memory of the essential facts. And that she is . . . unable because of lack of memory to give present-day testimony concerning the events that happened so long ago." Given the "trial court's special opportunity to observe the witness[]," *In re BZ*, 264 Mich App 286, 297; 690 NW2d 505 (2004), the trial court did not commit clear error when it found that FW was unavailable due to lack of memory.

Defendant contends, however, that the admission of FW's prior testimony violated his right to confront the witnesses against him. We review constitutional challenges de novo. *Watkins*, 491 Mich at 466-467.

The Sixth Amendment of the United States Constitution bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004). As to whether a statement is testimonial, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a . . . former trial[.]" *Id*. at 68.

The precise contours of defendant's Confrontation Clause argument are difficult to unravel. Defendant does not deny that he had a prior opportunity to cross-examine FW, and has not asserted that he should have been permitted to question her regarding her memory loss in the jury's presence. As noted, we discern no error in the trial court's determination that FW was unavailable to testify at the current trial. Defendant had the opportunity to cross-examine FW at the prior trial when the testimony was given. He had a strong motive to refute FW's testimony at that trial as his liberty and reputation were on the line. Defendant has not brought to our attention any caselaw supporting that the standard for unavailability under MRE 804(a)(3) runs afoul of *Crawford*,[1] or that the trial court's determination of FW's unavailability outside the

---

[1] At oral argument, defendant raised this Court's recent opinion in *People v Sardy*, ___ Mich App ___; ___ NW2d ___ (Docket No. 319227, issued January 19, 2017). However, defendant never identified the relief justified by that decision. In any event, *Sardy* is inapposite. The subject witness in *Sardy* was available to testify and appeared at trial. Her testimony did not go as expected and the prosecutor moved to have her deemed unavailable and her preliminary examination testimony admitted. This Court held that the trial court erred by limiting her cross-examination. The witness in this case was never available, as confirmed at the pretrial hearing.

-5-

jury's presence unconstitutionally deprived him of an opportunity to cross-examine her in that regard.[2] Accordingly, the admission of this testimony did not violate defendant's confrontation rights.

III. OV 11

Defendant further contends that the trial court improperly assessed 50 points for OV 11, increasing his total OV score and placing him in a higher OV level. Defendant did not challenge the score below, so our review is limited to plain error affecting defendant's substantial rights. *People v Loper*, 299 Mich App 451, 457; 830 NW2d 836 (2013).

We agree that the trial court improperly assessed 50 points for OV 11. MCL 777.41 provides for the scoring of OV 11 as follows:

(1) [OV] 11 is criminal sexual penetration. Score [OV] 11 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Two or more criminal sexual penetrations occurred......... 50 points

* * *

(2) All of the following apply to scoring [OV] 11:

(a) Score all sexual penetrations of the victim by the offender arising out of the sentencing offense.

(b) Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in [OVs] 12 or 13.

(c) Do not score points for the 1 penetration that forms the basis of a first- or third-degree [CSC] offense.

There is no record evidence that defendant ever penetrated AK multiple times during a single offense, such that additional penetrations could have arisen from the sentencing offense. Rather, the evidence reveals a pattern of criminal behavior involving individual penetrations in isolated events that did not arise from each other or from the sentencing offense. See *People v Johnson*, 298 Mich App 128, 132; 826 NW2d 170 (2012) (holding that "[t]he "arising out of" standard "requires more than the mere fact that the penetrations involved the same defendant and

---

[2] Indeed, MRE 103(C) requires that preliminary issues regarding the admissibility of evidence be resolved outside the presence of the jury "so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury."

victim"). Accordingly, the trial court should not have counted the other uncharged penetrations to score OV 11.

This error does not entitle defendant to resentencing, however. MCL 777.41(b) provides for penetrations that are irrelevant to OV 11 to be scored under OV 12 or 13. MCL 777.43(1)(a) provides for a 50-point score under OV 13 when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person . . . less than 13 years of age." The presentence investigation report indicates that defendant sexually assaulted AK "over 30 times" between the ages of 10 and 13. AK supported this statement at the preliminary examination by testifying that she did not exactly "know how many times" defendant had assaulted her, but "it was a lot." Therefore, in lieu of scoring OV 11, the court should have assessed 50 points for OV 13. As this correction leaves defendant's sentencing range as is, remand for resentencing is not required.

Defendant also argues that defense counsel was ineffective for failing to object to the OV scoring. In order to prevail on a claim of ineffective assistance of counsel, "the defendant must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Stanaway*, 446 Mich 643, 687-688; 521 NW2d 557 (1994). Had counsel objected to the scoring of OV 11, the prosecutor and the court would have relied upon MCL 777.41(b) and considered the underlying conduct to score OV 13. Accordingly, defense counsel's lack of objection was harmless.

We affirm.

/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Elizabeth L. Gleicher