*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRANDON LAWRENCE TURNER,

Defendant-Appellant.

UNPUBLISHED
October 10, 2024
2:28 PM

No. 366839
Macomb Circuit Court
LC No. 2022-002081-FH

Before: BORRELLO, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction for unlawful use of a motor vehicle, MCL 750.414.[1] Defendant was sentenced to one year of probation. We affirm.

This case arises from the taking and use of a 2016 Chevy Malibu from the owner's residence in Warren, Michigan on April 3, 2022. Defendant was the former romantic partner of the car's owner, RB, and they shared a child born in early February 2022. On February 7, 2022, RB gave defendant the spare set of keys to her car so that he could commute to and from work while his own vehicle was in the repair shop. Shortly thereafter, on February 19, 2022, the couple had a dispute regarding the care of their child, including disputes about defendant's use of RB's car. Nevertheless, defendant left in RB's car because his car was still in the shop.

On February 23, 2022, RB asked defendant to return her car; however, he refused, telling her that if he did not get to see their child that weekend, she was not getting her car back. The next day, RB used her key fob to retrieve her car from defendant's home on Prince Hall Drive in Detroit.

---

[1] MCL 750.414 prohibits the taking or use of a motor vehicle without authority and without the intent to steal (i.e., permanently deprive another of the vehicle). Although defendant was initially charged with unlawfully driving away an automobile, MCL 750.413, the trial court convicted him of this lesser crime.

On February 28, 2022, RB dropped off their child with defendant. During the exchange, RB recorded their hostile verbal interaction. That recording was admitted during trial, and, on it, defendant told RB that he would be back to get her car. Although RB did not give defendant permission to take her car, he retained possession of one of her key fobs.

On March 23, 2022, RB filed a custody case as to their child. A temporary order for custody and parenting time was entered. Defendant was not served until May 2022. And, although RB verbally discussed the suit with defendant, she could not recall the exact date she had done so.

On the morning of April 3, 2022, RB discovered that her car was missing. RB called defendant, asking why he would take her car. Defendant replied that he knew nothing about it and advised her to file a police report. RB did so.

Review of RB's home security camera footage from approximately 3:50 a.m. showed a car approaching and the lights on RB's car flashing, indicating to RB that her car was being unlocked with a key fob. Defendant still had the key fob that RB had given to him in February. RB described how the approaching car moved closer to her home and parked. A person got out of that vehicle before entering RB's car and driving off. RB explained that the key fob was used to make her car's lights flash again and to start it.

The video from RB's home security system was admitted at trial. And RB testified that defendant's face was not actually seen on its footage.

The next day, RB used her GPS system to locate her car in the parking lot of the Prince Hall Drive home in Detroit. At that time, RB was aware that defendant no longer lived at that address because he had moved on March 1, 2022. And, although RB did not notice any damage to her driver's side door or her car's steering wheel, she observed that its contents were ransacked and that her baby's car seat base was missing along with her "personal effects." Later that summer, RB saw the car seat base in defendant's girlfriend's car.

On appeal, defendant argues that his conviction for unlawful use of a motor vehicle should be reversed because there was insufficient evidence to establish that he unlawfully used RB's vehicle. We disagree.

After a bench trial, a claim of insufficient evidence is reviewed de novo. *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). "[T]his Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. See also *People v Sherman-Huffman*, 241 Mich App 264, 265; 615 NW2d 776 (2000), aff'd 466 Mich 39 (2002). This Court does not "interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619. And "[a]ll conflicts in the evidence must be resolved in favor of the prosecution." *Id*. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

The elements for unlawful use of a motor vehicle are:

(1) the motor vehicle did not belong to the defendant, (2) having obtained lawful possession of the vehicle from the owner, the defendant used it beyond the authority which was given to him, and (3) the defendant must have intended to use the vehicle beyond the authority granted to him, knowing that he did not have the authority to do so. [*People v Hayward*, 127 Mich App 50, 60-61; 338 NW2d 549 (1983).]

Defendant argues that the evidence at trial did not establish that he "was the individual that took the automobile from [RB's] home." We disagree.

Identity is also an essential element in a criminal prosecution. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976); *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018). Thus, the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt. *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction of a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); see also *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). The credibility of identification testimony is for the trier of fact to resolve, and this Court will not resolve it anew. *Davis*, 241 Mich App at 700.

Defendant offers several reasons why his use of the vehicle was not supported by the evidence. We address his arguments separately.

First, defendant asserts that RB's testimony is the only proof that he possessed a second key fob for her car. It is true that RB testified that defendant had a second key fob. But, defendant fails to recognize that RB's security footage captured the lights on her car flashing because a key fob was used to unlock it, and, later, to start it. The responding police officer also viewed the video, which was admitted as an exhibit at trial, and it showed a person walking up to RB's car, the car's lights flashing, the person getting into the vehicle, the car's lights flashing again, and the person driving away with RB's car. And, when RB recovered her vehicle, she did not see any damage to the driver's side door or steering column. Based on RB's testimony, as corroborated by the security footage, the trial court found that defendant possessed a second set of keys to the vehicle. And to the extent that defendant questions the weight or credibility of RB's testimony about defendant's possession of another set of keys to her car, this Court cannot interfere with the fact-finder's determination of the weight and credibility of witness testimony. See *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012); MCR 2.613(C). The failure of the police to obtain the second set of keys from defendant does not diminish the sufficient testimony and evidence that otherwise exists.[2]

---

[2] The prosecution is not required to "disprove every reasonable theory consistent with innocence to discharge its responsibility." *Nowack*, 462 Mich at 400. Rather, the prosecution must present sufficient evidence to support the elements of the offense beyond a reasonable doubt, which may be established by circumstantial evidence and reasonable inferences therefrom. See *Bennett*, 290 Mich App at 472.

Second, defendant argues that because the videotape did not show that he was the person that took RB's car, the trial court improperly speculated that he was the person depicted. We disagree. As just discussed, there is ample circumstantial evidence from which the trial court could conclude beyond a reasonable doubt that defendant used RB's car without her permission. RB testified that defendant had a second set of keys to her car and that the flashing lights in her home security footage indicated that it was unlocked by someone with keys. At that time, RB was asleep and did not use the keys in her possession to unlock her car. And after RB recovered her car the following day, she did not observe any damage to either its driver's side door or steering wheel. Thus, it is reasonable to infer from the circumstantial evidence that defendant, the only other person possessing keys to RB's car, was the person depicted in the security footage who unlocked and took it. This inference is strengthened by defendant's refusal to return RB's car when she asked him to do so on February 23, 2022, leading RB to retrieve her car the next day. And just four days later, RB recorded defendant telling her that he would "be back to get [her] car." Moreover, RB found and recovered her car from defendant's former address in the spot where defendant typically kept it. Finally, months later, RB noticed that the child car seat base missing from her car after it was taken was inside the vehicle of defendant's new girlfriend. In sum, the circumstantial evidence and inferences therefrom are sufficient to prove beyond a reasonable doubt that defendant was the person who took RB's vehicle and used it. *Hayward*, 127 Mich App at 60-61; *Kern*, 6 Mich App at 409-410.

Third, defendant asserts that the evidence was insufficient because RB admitted that defendant had moved over a month before she found her vehicle in the parking lot of the prior address they shared. Again, given the proofs already discussed, the evidence presented at trial was sufficient to establish defendant's identity and guilt. *Id*.

Fourth, and finally, defendant questions why RB texted him that she needed her car back on April 6, 2022,[3] despite testifying that she had retrieved it on April 4th. He contends that this evidence undermines the finding that he used RB's car without permission. Initially, RB testified that she did not "recall that [text] conversation"; however, upon review of the text, she testified that she "guessed" she told him that "if that's what's in the message[]." But RB further explained that she had referenced her information as well and that she had to retrieve her

> car to know that my [personal] information wasn't in my car. So, my car, it's my personal information that were [sic] in my car weren't [sic] in there. So, it was probably card, referring to the card. But, okay, if that's what happened.

In other words, RB testified that the word "car" in the text "could have been a typo" for the word "card." All that RB could attest to at trial was that she retrieved her vehicle at midnight on April 4, 2022. While this text exchange between RB and defendant may call into question the date that RB retrieved her car, it does not disprove that defendant used the vehicle without authority. Again, RB told defendant that she needed her vehicle back on February 23, 2022. When he refused to

---

[3] At trial, defense counsel represented that the message was that RB needed her "personal information" and her "car" "to get [their child] to her appointment [and to get] her milk."

-4-

return it on that date, he no longer had authority to use the vehicle, and any subsequent use of RB's car by defendant exceeded the authority she had previously given to him. *Id.*

Affirmed.

/s/ Stephen L. Borrello
/s/ Christopher M. Murray
/s/ Anica Letica