*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN FREDERICK LANGE,

        Defendant-Appellant.

UNPUBLISHED
November 18, 2024
11:27 AM

No. 366442
Wayne Circuit Court
LC No. 22-006621-01-FC

Before: FEENEY, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions for assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a), assault by strangulation, MCL 750.84(1)(b), and unlawfully driving away an automobile (UDAA), MCL 750.413. The trial court sentenced defendant to two years' probation. We affirm.

## I. BACKGROUND

This case arises out of defendant's assault of his brother-in-law, Paul Webster. At trial, Paul testified that he is married to defendant's sister, Lorene Webster.[1] In March 2022, defendant and Lorene's mother, Nellie Lange,[2] broke her ankle and was placed in a rehabilitation facility. Nellie had dementia and required constant monitoring, and because the facility lacked the staff to constantly monitor Nellie, defendant and Lorene took turns monitoring her at the facility. Lorene monitored Nellie during the day, and defendant monitored her at night. Because defendant did not have a vehicle, Paul transported defendant between defendant's home and the rehabilitation facility. Nellie was scheduled to move to a nursing home on May 3, 2022. That morning, Paul drove defendant home from the facility after his monitoring shift. Paul asked defendant if they could retrieve a reclining chair from defendant's home so Paul could move the chair to Nellie's

---

[1] This opinion uses Paul's and Lorene's first names for clarity.

[2] Because defendant and Nellie share the same last name, this opinion uses Nellie's first name for clarity.

new nursing home, and defendant agreed. They arrived at defendant's home, and after Paul picked up a piece of the chair to move it, defendant became upset because he believed that Paul was not moving the chair properly. Paul testified that "there was a little pushing back and forth on the chair," which ultimately ended up in the back of Paul's vehicle. Paul then got in his vehicle and left.

When he returned to defendant's home later that evening to transport defendant for shift with Nellie, defendant was waiting in the driveway. Paul watched defendant enter and exit his home multiple times, grab some fliers out of his mailbox, then get into the front passenger seat of Paul's vehicle. Paul pulled out of the driveway, and as he began to drive down the street, defendant began pulling on his seat belt in a manner that caused Paul to fear that defendant might break it. Paul described defendant's demeanor at this point as aggressive and animated. Paul pulled over several houses away from defendant's home and asked defendant to get out of his vehicle but defendant refused, so Paul continued driving. After defendant began ripping up the fliers and throwing them out of the window, Paul pulled over a second time and asked defendant to get out of his vehicle, but defendant again refused, so Paul began driving toward the police station, which was approximately one mile from defendant's home.

While driving toward the police station, Paul pulled over a third time and asked defendant to get out of his vehicle. Defendant screamed, "I'm going to kill you" three times. Because he was only a few minutes away from the police station, Paul continued driving in that direction. As Paul pulled into the circle drive that leads to the police station, defendant removed his own belt and asked Paul, "Do you want to die now or do you want to die later?" As Paul continued driving, defendant wrapped his belt around Paul's neck and applied pressure; Paul could not breathe and lost consciousness for approximately 10 to 15 seconds. The next thing Paul knew, he was slumped down in the driver's seat, and defendant was punching him in the side of his head and face. Paul parked the vehicle at the police station, exited the vehicle, and entered the police station; when Paul turned back he saw defendant driving down the road outside the police station in Paul's vehicle. Paul did not give defendant permission to take his vehicle. As a result of the assault, Paul sustained a large contusion on his head, bruising on the right side of his face and mouth, injuries to his ear, and bruising around his neck.

After the presentation of evidence, the jury found defendant guilty of AWIGBH, assault by strangulation, and UDAA, and defendant was thereafter sentenced to two years' probation. Defendant now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution presented insufficient evidence of his intent to commit great bodily harm, and accordingly argues that there was insufficient evidence to sustain his conviction for AWIGBH. We disagree.

This Court reviews de novo challenges to the sufficiency of the evidence by viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "But more importantly, the standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences

and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks, citation, and alteration omitted). The prosecution is not required to disprove every reasonable theory of a defendant's innocence; the prosecution "need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Kenny*, 332 Mich App at 403. This Court resolves any conflicts in the evidence in favor of the prosecution. *Id*.

To sustain a conviction for AWIGBH, the prosecution was required to prove "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted). On appeal, defendant only contests the second element—whether the prosecution presented sufficient evidence of defendant's intent to inflict great bodily harm less than murder. "The intent to do great bodily harm less than murder is an intent to do serious injury of an aggravated nature." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citation omitted). "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *Id*. at 629. A defendant's intent to cause serious injury of an aggravated nature can be inferred from his or her actions, including the making of threats. *Id*. "Although actual injury to the victim is not an element of the crime, injuries suffered by the victim may also be indicative of a defendant's intent." *Id*.

The prosecution presented sufficient evidence that defendant intended to inflict great bodily harm less than murder. Paul testified that, after he asked defendant to exit his vehicle for the third time, defendant screamed three times, "I'm going to kill you." Defendant then removed his belt and asked Paul, "Do you want to die now or do you want to die later?" After defendant wrapped his belt around Paul's neck and applied pressure, Paul lost consciousness; when he gained consciousness approximately 10 to 15 seconds later, defendant was punching Paul in the side of his face and head. Based on defendant's threats and his repeated punching of Paul's face and head, the jury could infer that defendant intended to inflict great bodily harm less than murder. The jury could also infer defendant's intent to inflict great bodily harm less than murder on the basis of Paul's injuries. See *People v Dillard*, 303 Mich App 372, 378; 845 NW2d 518 (2013), abrogated on other grounds by *People v Barrera*, 500 Mich 14 (2017) (explaining that injury to the victim can be "strongly probative" of the actor's intent because "the extent of any injury and the presumption that one intends the natural consequences of one's acts are both proper considerations for the jury"). Paul testified that, as a result of defendant punching him in the face and head, he sustained numerous injuries, including a large contusion to his head, bruising on the right side of his face and mouth, and cauliflower ear.

Defendant argues that the prosecution did not present sufficient evidence of intent to inflict great bodily harm less than murder because the evidence demonstrated that defendant was "once diagnosed with anxiety, overstressed, reputed by the community to have mental health issues, and [was] obviously having a meltdown" on the day of the assault. This argument is unpersuasive for two reasons. First, no evidence was presented that defendant had been diagnosed with anxiety, was overstressed, or had a reputation for mental health issues. Second, even if such evidence was presented, defendant cites no authority to support his assertion that his alleged anxiety diagnosis, reputation for mental health issues, or the fact that he was "having a meltdown" rendered him unable to form the requisite intent to commit great bodily harm less than murder. "[T]he failure

to cite any supporting legal authority constitutes abandonment of an issue." *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003).

## III. DOUBLE JEOPARDY

Defendant next argues that his convictions for AWIGBH and assault by strangulation arose out of the same conduct and thus violate the constitutional prohibition against double jeopardy. We disagree.

Defendant failed to preserve his double-jeopardy challenge by raising it in the trial court. This Court reviews an unpreserved double-jeopardy challenge for plain error affecting substantial rights. *People v Barber*, 332 Mich App 707, 713; 958 NW2d 288 (2020). "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *People v Burkett*, 337 Mich App 631, 643; 976 NW2d 864 (2021) (quotation marks and citation omitted).

"The Double Jeopardy Clauses of the United States Constitution and the Michigan Constitution prohibit a person from twice being placed in jeopardy for the same offense." *Barber*, 332 Mich App at 713. This prohibition protects individuals in three ways: "(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *Barber*, 332 Mich App at 713 (quotation marks and citation omitted). On appeal, defendant argues that the trial court violated the "multiple punishments" strand of double-jeopardy protections by imposing multiple punishments for the same offense.

"The purpose of the double jeopardy protection against multiple punishments for the same offense is to protect the defendant from having more punishment imposed than the Legislature intended." *People v Dickinson*, 321 Mich App 1, 10; 909 NW2d 24 (2017) (quotation marks and citation omitted). The "multiple punishments" strand of the prohibition against double jeopardy is not violated when "the Legislature specifically authorizes cumulative punishment under two statutes." *Barber*, 332 Mich App at 713. "Conversely, where the Legislature expresses a clear intention in the plain language of a statute to prohibit multiple punishments, it will be a violation of the multiple punishments strand for a trial court to cumulatively punish a defendant for both offenses in a single trial." *People v Miller*, 498 Mich 13, 18; 869 NW2d 204 (2015). When it is unclear whether the Legislature intended to permit multiple punishments for the same offense, "Michigan courts apply the 'abstract legal elements' test . . . to ascertain whether the Legislature intended to classify two offenses as the 'same offense' for double jeopardy purposes." *Id*. at 19. Under the abstract legal elements test, double jeopardy is not violated "if each offense has an element that the other does not." *People v Ream*, 481 Mich 223, 240; 750 NW2d 536 (2008).

Defendant was convicted of AWIGBH under MCL 750.84(1)(a) and assault by strangulation under MCL 750.84(1)(b). The elements of AWIGBH are "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *Blevins*, 314 Mich App at 357. The elements of assault by strangulation are (1) an assault, and (2) the intentional "impeding [of] normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or

-4-

mouth of another person." MCL 750.84(1)(b), (2).  See also *People v Lydic*, 335 Mich App 486, 498 n 9; 967 NW2d 847 (2021).  MCL 750.84, which criminalizes both AWIGBH and assault by strangulation, states, "This section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law arising out of the same conduct as the violation of this section."  MCL 750.84(3).

To support his double-jeopardy argument, defendant relies solely upon *Barber*, in which this Court held that the imposition of convictions for AWIGBH and assault by strangulation arising out of a *single act* of strangulation violated the prohibition against double jeopardy.  *Barber*, 332 Mich App at 718.  In so holding, this Court reasoned:

> [MCL 750.84(3)] expressly allows multiple convictions and punishments when the same conduct violates MCL 750.84(1) and some other criminal statute.  The fact that the Legislature expressly authorized multiple punishments for "the violation of [Subsection (3)]" and any other statutory violations demonstrates that the Legislature did not intend to permit multiple punishments for violations of MCL 750.84(1)(a) and (b).  If the Legislature had intended to allow multiple punishments for violations of both Subsections (1)(a) and (1)(b) arising out of the same conduct, it clearly knew how to do so.  Additionally, to interpret MCL 750.84(1) as permitting multiple punishments for violations of its subsections would render the specific authorization in MCL 750.84(3) surplusage.  [*Id*. at 717 (citations omitted; second alteration in original).]

Thus, the *Barber* Court held that, when a defendant is convicted of AWIGBH and assault by strangulation arising from a single act of strangulation, the imposition of both convictions violates the prohibition against double jeopardy because the statutory language demonstrates that the Legislature did not intend to permit multiple punishments for violations of MCL 750.84(1)(a) and (b) arising out of the same conduct.  Defendant's AWIGBH and assault by strangulation convictions in this case did not arise from a single act of strangulation, so contrary to defendant's argument, this case is not like *Barber*.

Defendant asserts that his convictions nevertheless arose from the same conduct—his "attacks" on Paul "in [Paul's] vehicle outside the police station."  But this argument fails to recognize that "[t]here is no violation of double jeopardy protections if one crime is complete before the other takes place, even if the offenses share common elements or one constitutes a lesser offense of the other."  *People v Lugo*, 214 Mich App 699, 708; 542 NW2d 921 (1995).  The evidence demonstrated that, while Paul was driving with defendant in the passenger seat, defendant removed his belt, wrapped it around Paul's neck, and applied pressure until Paul lost consciousness.  This evidence supported a conviction for assault by strangulation under MCL 750.84(1)(b).  The evidence further demonstrated that, when Paul regained consciousness approximately 10 to 15 seconds later, he was slumped down in the driver's seat, and defendant was punching Paul in the side of his face and head, causing injuries.  This additional evidence supported a conviction for AWIGBH under MCL 750.84(1)(a).  Accordingly, contrary to defendant's assertions, his convictions for AWIGBH and assault by strangulation did not arise out of the same conduct, and the conduct giving rise to the assault by strangulation conviction was complete before the conduct giving rise to the AWIGBH conviction occurred.  "Thus, the incidents

-5-

composing these crimes were separate and distinct, and double jeopardy principles were not offended." *People v Colon*, 250 Mich App 59, 63-64; 644 NW2d 790 (2002).

## IV. JURY INSTRUCTIONS

Defendant next argues that the trial court erred by failing to instruct the jury on the offense of using a motor vehicle without authority but without intent to steal (UMVWA) because, according to defendant UMVWA is a necessarily included lesser offense of UDAA. Defendant waived this issue in the trial court, so there is nothing for this Court to review.

Before the trial court issued the jury instructions, it inquired if either party had concerns about the proposed instructions, and defense counsel said that he did. This led to a 20-minute off-the-record conversation between the trial court and the parties. When they went back on the record, the court stated, "We did have a conversation off the record and agreed to certain revisions to the final jury instructions." The court then asked if the parties had any further objections, and defense counsel said he did not. After the trial court instructed the jury, the court asked the defense if it was satisfied with the instructions given, and defense counsel indicated that he was. "[B]y expressly and repeatedly approving the jury instructions on the record, defendant waived any objection to the [potentially] erroneous instructions, and there is no error to review." *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011). See also *People v Carter*, 462 Mich 206, 209; 612 NW2d 144 (2000) (explaining that "waiver extinguishes any error and precludes defendant from raising the [waived] issue on appeal").

## V. INEFFECTIVE ASSISTANCE

Defendant next argues that trial counsel provided ineffective assistance of counsel by failing to request an instruction on UMVWA as a necessarily included lesser offense of UDAA. We disagree.

Defendant failed to preserve this claim by either moving for a new trial or requesting a *Ginther*[3] hearing, *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), so this Court's review is limited to errors apparent on the record, *Spaulding*, 332 Mich App at 656. To establish a claim of ineffective assistance of counsel, a defendant "must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Muniz*, 343 Mich App 437, 448; 997 NW2d 325 (2022) (quotation marks and citation omitted). Counsel is presumed effective, and a defendant "bears a heavy burden of proving otherwise." *Id*. (quotation marks and citation omitted).

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022). A trial court, upon

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

request, should instruct the jury on any necessarily included lesser offense if "a rational view of the evidence would support it." *People v Silver*, 466 Mich 386, 388; 646 NW2d 150 (2002).

While UMVWA is a necessarily included lesser offense of UDAA, see *People v Crosby*, 82 Mich App 1, 3; 266 NW2d 465 (1978),[4] defendant's trial counsel's failure to request an instruction on UMVWA did not fall below an objective standard of reasonableness because a UMVWA instruction was not supported by a rational view of the evidence. The elements of UMVWA are:

> (1) the motor vehicle did not belong to the defendant, (2) having obtained lawful possession of the vehicle from the owner, the defendant used it beyond the authority which was given to him, and (3) the defendant must have intended to use the vehicle beyond the authority granted to him, knowing that he did not have the authority to do so. [*People v Hayward*, 127 Mich App 50, 60-61; 338 NW2d 549 (1983).]

No evidence was presented demonstrating that Paul ever gave defendant permission to possess the vehicle, nor does the evidence support an inference that defendant had Paul's permission to possess the vehicle. Paul testified that after he exited the vehicle and entered the police station, he saw defendant driving Paul's vehicle down the road. This evidence, combined with Paul's testimony that he did not give defendant permission to take his vehicle at any time, supports an inference that defendant did not have Paul's permission to possess the vehicle. Thus, a rational view of the evidence does not support that defendant "obtained lawful possession of the vehicle" from Paul, so he would not have been entitled to a UMVWA instruction had one been requested. And because defendant was not entitled to an instruction on UMVWA, defendant's trial counsel's failure to request such an instruction does not constitute ineffective assistance. See *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021), ("Failure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel.").

Defendant does not assert on appeal that a rational view of the evidence supported a UMVWA instruction; rather, defendant argues that he was entitled to a UMVWA instruction because no evidence was presented demonstrating that defendant intended to permanently deprive Paul of his vehicle. However, the distinction between UDAA and UMVWA is whether a defendant had permission to possess the vehicle that he unlawfully uses, compare *Hayward*, 127 Mich App at 61 (identifying the elements of UMVWA) with *People v Hendricks*, 200 Mich App 68, 71; 503 NW2d 689 (1993) (identifying the elements of UDAA), not whether a defendant intends to permanently deprive the vehicle's owner of the vehicle. Thus, for the purposes of determining whether a UMVWA instruction was proper, it is immaterial that defendant did not intend to permanently keep Paul's vehicle.

---

[4] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *People v Craig*, 342 Mich App 217, 226 n 3; 994 NW2d 792 (2022) (quotation marks and citation omitted).

## VI. DIMINISHED CAPACITY

Defendant finally argues that our Supreme Court's holding in *People v Carpenter*, 464 Mich 223; 627 NW2d 276 (2001), precluding a defendant from asserting a diminished capacity defense, infringed upon his due-process right to present a defense. Defendant argues that *Carpenter* was wrongly decided and should be revisited, but offers no authority to support his assertion that this Court may decline to follow binding Supreme Court precedent. To the contrary, this Court is "bound to follow decisions of the Supreme Court unless those decisions have clearly been overruled or superseded." *People v Robar*, 321 Mich App 106, 117; 910 NW2d 328 (2017). As *Carpenter* has not been clearly overruled or superseded, this Court is bound to follow it.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace